IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No.  08-cv-02014-WYD-CBS

LUFT FARMS, LLC, a Colorado limited liability company;
ALLEN REUTER; and
CONNIE REUTER,

      Plaintiffs,

v.

THE WESTERN SUGAR COOPERATIVE, a Colorado Cooperative Corporation,

      Defendant.

---

## ORDER

---

THIS MATTER came before the Court during a hearing on November 15, 2010 on two motions: (1) Defendant's Motion to Dismiss the Second Amended Complaint [ECF No. 123], and its brief in support [ECF No. 124], filed October 22, 2009; and (2) Defendant's Motion to Strike Class Allegations and Dismiss "Class Claims" in Second Amended Complaint [ECF No. 125], and its brief in support [ECF No. 126], filed October 22, 2009.  Plaintiffs responded to both motions on November 19, 2010 [ECF No. 131 and 133].  Defendants replied on December 7, 2009 [ECF No. 136 and 137].   The Court, having considered the motions, responses, replies, and argument during the hearing, enters the following written Order.

## I.    FACTUAL BACKGROUND

Plaintiffs Alan and Connie Reuter are sugar beet farmers residing in Colorado and Plaintiff Luft Farms LLC is a farming company in Logan County, Colorado.

Defendant The Western Sugar Cooperative (the "Cooperative") is a Colorado cooperative created pursuant to the Colorado Cooperative Act, C.R.S. § 7-56-101 *et seq.*  The Cooperative is owned principally by sugar beet growers and others involved in the cultivation of sugar beets.  In 2007, the Cooperative began assessing liquidated damages against shareholders who did not meet their contractual obligations to deliver certain quantities of sugar beets to the Cooperative for the 2007 crop year.  Subsequently, Plaintiffs, who are members of the Cooperative, filed a Class Action complaint against the Cooperative.

In early 2000 a group of growers operating as the "Rocky Mountain Sugar Growers Cooperative" began efforts to acquire the Western Sugar Company, which was a subsidiary of Tate & Lyle North American Sugars.  That group issued an Offering Memorandum on December 5, 2000 ("the Memorandum") to provide growers with information about the terms under which they could purchase shares of stock in connection with the acquisition of the Western Sugar Company.  Each share of Patron Preferred Stock purchased by a grower required that grower to deliver one acre of sugar beets to the Cooperative.

The Memorandum represented that following the acquisition the new company would conduct business "substantially as it has been historically operated."  It further indicated that each farmer-producer "will be required to enter into a uniform Growers Agreement" that would specify obligations and rights of the Cooperative and the growers.  The Memorandum informed growers that they would learn the terms of their contracts when they became members.  With funds raised through the sales of stock,

the group of growers acquired the Western Sugar Company in April 2002 and changed the name of the company to the Western Sugar Cooperative.

For the first growing year–2002–the Cooperative assumed the grower agreements previously entered into by its predecessor.  Under that agreement, growers could choose not to grow sugar beets upon timely written notice.  In 2003, the Cooperative changed the growers agreement and added the two provisions that are central to this dispute.  First, it added a provision that does not expressly allow for termination of the Agreement by a shareholder in the Cooperative.  Second, it added a term that allows for the imposition of liquidated damages for failure to grow an acre of sugar beets for each share held by the grower.  From 2003-2006 the liquidated damages provision stated that damages would be assessed in relation to each shareholders share of the Cooperative's fixed cost.  In 2007, however, the Cooperative changed the shareholders agreement to include a specific amount–$380.00 per acre–said to reflect each shareholders share of "fixed costs for processing the crop."  Plaintiffs allege that $380 per acre far exceeds the fixed costs for processing the crop "by a multiple of three to nearly eight times."  Prior to this litigation, the Cooperative did not disclose its methodology used to calculate the amount of liquidated damages it assessed.

Because the Plaintiffs were unable to lease sufficient ground on commercially reasonable terms to plant sugar beets, the Cooperative assessed liquidated damages against them and against Luft farms.  Plaintiffs wish to terminate their agreement with the Cooperative.

## II.   PROCEDURAL BACKGROUND

The Plaintiffs filed their initial Complaint on September 17, 2008.  Plaintiffs then filed a motion for a preliminary injunction on October 27, 2008 [ECF No. 10, 11].  On November 21, 2008, I held a hearing on Plaintiffs' motion for a preliminary injunction and on February 20, 2009, I entered an order denying that motion [ECF No. 54]. Plaintiffs then filed an Amended Complaint [ECF No. 60] on April 2, 2009 and shortly thereafter the Defendants filed a motion to dismiss [ECF No. 61] and a motion to stay pending the outcome of that motion [ECF No. 64].  Magistrate Judge Shaffer granted the motion to stay discovery subject to the Cooperative responding to two requests for production. [ECF 94].  Discovery was stayed in all other respects.  The Court granted Plaintiffs leave to file a Second Amended Complaint [ECF No. 117], deemed filed September 15, 2009.  Defendant then re-filed the motions to dismiss and supporting memorandums that are the subject of this order.

## III.   ANALYSIS

On behalf of themselves and a purported class of similarly situated growers, Plaintiffs assert the following claims (1) violation of the Agricultural Fair Practices Act; (2) Lack of Mutuality; (3) violation of the Colorado Cooperative Act (4) Violation of Covenant of Good Faith and Fair Dealing (5) Estoppel (6) Breach of Fiduciary Duty; (11) Breach of Contract; (12) Declaratory Judgement and Injunctive relief.  On behalf of the named plaintiffs only, Plaintiff asserts the following claims: (7) Unjust Enrichment; (8) Promissory Estoppel; (9) Breach of Fiduciary Obligation; (10) Force Majeure.  The Cooperative seeks dismissal of each of these claims.

A.      **Standard of Review**

Under Rule 12(b)(6), the Court's function "is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's Complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555.) Likewise, a complaint containing "naked assertion[s]" devoid of "further factual enhancement" will not suffice. *Id.*

Generally, specific facts are not necessary; the complaint need only give the defendant fair notice of what the claim is and the grounds upon which it rests. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The "plausibility" standard requires that relief must plausibly follow from the facts alleged, not that the facts themselves be plausible. *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir.2008). However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Iqbal*, 129 S.Ct. at 1950 (internal quotation marks and alteration marks omitted). In other words, "a plaintiff must 'nudge [his] claims across the line from conceivable to plausible' in order to survive a motion to dismiss." *The Ridge at*

*Red Hawk, L.L.C. v.Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Twombly*, 550 U.S. at 547); *see also Iqbal*, 129 S. Ct. at 1950-51.

"In addition to the complaint, the court may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir.2002).  Furthermore, "facts subject to judicial notice may be considered in a Rule 12(b)(6) motion without converting the motion to dismiss into a motion for summary judgment."  *See Tal v. Hogan*, 453 F.3d 1244, 1265 n. 24 (10th Cir. 2006). This allows the Court to "take judicial notice of its own files and records, as well as facts which are a matter of public record."  *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir.2000), *abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir.2001).

B.    **Alleged Violation of the Agricultural Fair Practices Act**

Plaintiffs' Second Amended Complaint, like the original Complaint, alleges that the Cooperative has coerced and intimidated named Plaintiffs and the purported class in violation of sections 2303(a) and (c) of the Agricultural Fair Practices Act (the "AFPA").

As I previously set forth in my February 20, 2009 Order denying Plaintiffs' motion for a preliminary injunction (hereinafter the "February Order"), these sections of the AFPA forbid cooperatives such as Defendant to coerce producers to join, remain in, or enter contracts with a cooperative.  (February Order 7).   Section 7 U.S.C. § 2303(a) and (c) specifically provide that is unlawful to:

(a) To coerce any producer in the exercise of his right to join and belong to or refrain from joining or belonging to an association of producers, or to refuse to deal with any producer because of his membership in or contract with an association of producers; or

(c) To coerce or intimidate any producer to enter into, maintain, breach, cancel, or terminate a membership agreement or marketing contract with an association of producers or a contract with a handler.

The allegations in Plaintiffs Second Amended Complaint state that the "Cooperative has coerced and intimidated the Named Plaintiffs and Class" in violation of the sections 2303(a) and (c) by engaging in the following acts:

(a) Imposing a contract on the growers that purports to be terminable or transferable only, if ever, at the discretion of the Cooperative.

(b) Asserting and exercising unfettered discretion to modify the Agreement as it sees fit.

(c) Failing to meet with the Shareholder Advisory Committee to discuss modifications to the contract as required by § 16.2 of the Agreement.

(d) Refusing to call shareholders' meetings as required by Colorado statute to address issues of concern to the growers, including the terms of the Agreement.

(e) Refusing to provide the growers with meaningful financial disclosures necessary to evaluate the financial health of the Cooperative and the salary and performance of its executives.

(f) Threatening to impose and imposing liquidated damages in amounts far greater than the growers' initial investments in the Cooperative on growers who wish to or must the Cooperative or reduce their production.

(g) Deliberately imposing liquidated damages against growers far in excess of the shareholders' share of the "the fixed costs of processing the crop," contrary to the terms of the 2007 Agreement, and without disclosure of the fraudulent nature of the 2008 penalty.

(h) Withholding as "trade secrets" information from the membership of the Cooperative as a whole that would make it possible for members to calculate the fixed costs of their share of processing the crop.

(i) Exceeding and abusing the limited discretion given to it by the Memorandum and related documents.

(Second Am. Compl. ¶ 63).  The Cooperative argues that Plaintiffs allegations above fail to assert a plausible claim under the AFPA because the acts alleged by the Plaintiffs do not amount to "coercion" within the meaning of the Act.  I agree.

In my February Order [ECF No. 54], I previously held that plaintiffs had not alleged facts amounting to coercion under the AFPA.  The February Order stated:

> Even adopting the most favorable standard for the Plaintiffs, the facts of the present case do not amount to coercion under the AFPA. While Plaintiffs claim that the Cooperative imposed new contract provisions on its members unilaterally in 2003, they were in fact on notice of many aspects these provisions as early as 2000.  First, with regard to limits on transferability, the Offering Memorandum included a provision stating that "any farmer-produced desiring to reduce its acreage will need to sell some of its Patron Preferred Stock to other farmer-producers in order to reduce its acreage." It also stated, "We do not know whether there will be a market for the resale of the Patron Preferred Stock." Finally, it informed prospective shareholders that shares could only be transferred with the consent of the Board of Directors. With regard to the liquidated damages provision, the Offering Memorandum detailed the obligation to fulfill a delivery quota, and its statement that "[i]t is anticipated that the Board of Directors will develop rules dealing with the failure of members to deliver the quantity of sugar beets reflected by their Patron Preferred Stock" should have put Plaintiffs on notice of the possibility of liquidated damages. Thus, the only aspect of which the Plaintiffs did not have any notice until 2003 was the renewal provision.

> More importantly, Plaintiffs signed shareholder agreements every year from 2003 to 2007 without objection. The only point at which they felt "coerced" to stay in the Cooperative was starting in 2007, when the market collapsed and they were unable to fulfill their obligations. Thus, even if the Defendants inserted new provisions in the 2003 shareholder agreement and without notice to the Plaintiffs, Plaintiffs' argument is not viable considering that they stayed in the Cooperative and signed the agreements without objection five times annually.

(Order on Prelim. Inj., ECF No. 54 at 19-20).

Since the February Order, Plaintiffs filed a Second Amended Complaint that adds new allegations relating to the imposition and calculation of liquidated damages (see allegations (g), (h), and (i) above).  During oral argument on this issue, Plaintiffs concede that they signed shareholder agreements containing the liquidated damages provisions, but insist that they actually did not consent to these provisions.  First, Plaintiffs argue that when questioned about the liquidated damages provisions, the Cooperative told growers that these provisions were included at the insistence of lenders and that no liquidated damages would actually be assessed against the growers.  Plaintiffs thus argue that they were induced to sign the growers agreements containing the liquidated damages provisions by the misrepresentation regarding enforcement of the provision.  Plaintiffs further argue that the Cooperative said the liquidated damages provisions would be limited to "fixed costs," but the Cooperative has far exceeded that amount–and done so knowingly.

These new allegations, however, do not change the analysis in my February Order.  Neither Plaintiffs' prior allegations that the Cooperative miscalculated and overstated liquidated damages (Complaint, ECF No. 1 at ¶¶ 48-52), nor Plaintiff's new allegations of fraud and concealment in the calculation of those damages plausibly supports an AFPA claim.

It is worth noting that the Colorado Cooperative Act expressly allows for the imposition of liquidated damages against a grower who fails to meet delivery obligations.  *See* C.R.S. § 7-56-503(1) ("All such provisions shall be valid and enforceable in the courts of this state and clauses providing for liquidated damages

shall be enforceable as such and shall not be regarded as penalties.").  Moreover, as set forth in my February Order, the Offering Memorandum should have put the Plaintiffs on notice regarding the possibility of liquidated damages.

I comprehend Plaintiffs' complaint that the Cooperative has not dealt fairly with the growers by changing the terms of the shareholder agreement, miscalculating liquidated damages, and concealing the method used to calculate such damages.  If the shareholders agreements require liquidated damages to be set at an amount equal to "fixed costs" and there is admissible evidence that the Cooperative has exceeded this amount, the Cooperative may elect to pursue those claims in state court.

The AFPA, however, does not prohibit cooperatives from entering into and enforcing contracts with its members, including contracts containing liquidated damages provisions.  Indeed, the AFPA expressly states that it is not designed to alter existing state law.  *See* 7 U.S.C. § 2305(d) (The Act "shall not be construed to change or modify existing state law nor to deprive State courts of jurisdiction.")  And the Colorado Cooperative Act grants cooperatives the authority to enter into contracts with shareholders.  As such, I agree with the Cooperative that the AFPA does not provide a federal alternative to a state breach of contract or corporate governance claim that a cooperative shareholder wishes to assert against the association he voluntarily joined. (Defs.' Br. in Supp. of Mot. To Dismiss 34).  The AFPA does not require that Plaintiffs be allowed to terminate their shareholder status and contractual obligations to the Cooperative.  Because I find that the allegations of the Second Amended Complaint, like the original Complaint, do not amount to coercion within the meaning of the Act,

Plaintiffs AFPA claim is dismissed.

C.     **Remaining State Law Claims**

The AFPA is the only federal claim asserted by the Plaintiffs.  The Cooperative argues that I should decline to exercise supplemental jurisdiction over the remaining state law claims.  Plaintiffs do not respond to this argument.

Under 28 U.S.C. § 1367, a district court may decline to exercise supplemental jurisdiction if the district court has dismissed all claims over which it has original jurisdiction.  28 U.S.C. § 1367(c).  A district court's decision to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is "purely discretionary."  *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S.Ct. 1862, 1866 (2009); *see also TV Commc'ns Network, Inc. v. Turner Network Television, Inc.*,  964 F.2d 1022, 1028 (10th Cir. 1992) ("Pendent jurisdiction is extended at the discretion of the court and is not a plaintiff's right.")  The Tenth Circuit has stated that "[w]hen all federal claims have been dismissed, the court may and usually should, decline to exercise jurisdiction over any remaining state law claims ." *Smith v. City of Enid by and through Enid City Comm''*, 149 F .3d 1151, 1156 (10th Cir.1998).

Although Plaintiff initially filed its complaint over two years ago, its Second Amended Complaint was not filed until September 15, 2009, a little more than one year ago.  Furthermore, there has been little discovery in this case after the stay imposed by Magistrate Judge Shaffer on May 29, 2009 [ECF No. 94].  Accordingly, this case is still in the early stages of litigation.  I do not find any circumstances suggesting that judicial economy, convenience, fairness, and comity will be advanced if I retain jurisdiction over

the state-law claims, nor have any such arguments been advanced by Plaintiffs.  I

therefore decline to exercise supplemental jurisdiction over the remaining state law

claims asserted on behalf of the named Plaintiffs.  To be clear, I am dismissing the state

law claims for lack of subject matter jurisdiction, rather than failure to state a claim, and

Plaintiffs may re-file their state law claims in the appropriate forum.

> **D**.    **Motion to Strike Allegations and Dismiss "Class Claims"**

In its Motion to Strike Class Allegations and Dismiss "Class Claims" in the

Second Amended Complaint [ECF No. 131], the Cooperative argues that upon

dismissal of the AFPA claim, the court does not have jurisdiction over the remaining

state law class claims under 28 U.S.C. § 1332.  Plaintiffs argue that the diversity

requirements under 28 U.S.C. § 1332 are not implicated because the present action

was brought under 28 U.S.C. § 1331.  Plaintiff's briefing therefore focuses on the

numerosity requirement set forth in Rule 23(a).

The Plaintiffs, as the party seeking to invoke this Court's jurisdiction, bear the

burden of establishing that the jurisdictional prerequisites are met.  *Apodaca v. Allstate*

*Ins. Co.*  07-cv-00937, 2008 WL 113844, at *2-3  (D.Colo. Jan. 8, 2008) ("Although the

Tenth Circuit has not yet considered whether the burden of proof is different under

CAFA than under basic diversity jurisdiction, at least five circuits have held that the

burden remains unchanged, and this court is aware of no circuit court case holding to

the contrary.")(citing cases).

Plaintiffs have failed to meet their burden as they have not alleged facts relating

to diversity jurisdiction with respect to the remaining class claims. In fact, Plaintiffs

disavow reliance on 28 U.S.C. § 1332(d) as a jurisdictional basis for their class claims and instead rely solely on 28 U.S.C. § 1331. (Pl.'s Resp. 8 ("the diversity jurisdiction requirements of U.S. 28 § 1332(d) are not implicated.").  Upon dismissal of the AFPA claim, however, I find there is no jurisdictional basis under 28 U.S.C. § 1332(d) for the remaining state-law class claims where Plaintiffs have not alleged facts sufficient to provide a basis for such jurisdiction.

## IV.    CONCLUSION

Based upon the foregoing, it is hereby

ORDERED that Defendant's Motion to Dismiss the Second Amended Complaint [ECF No. 123], is **GRANTED**.  Plaintiffs' first Claim for violation of the AFPA is **DISMISSED WITH PREJUDICE.**  Plaintiffs' remaining state law claims are **DISMISSED WITHOUT PREJUDICE.**  It is

FURTHER ORDERED that Defendant's Motion to Strike Class Allegations and Dismiss "Class Claims" in Second Amended Complaint [ECF No. 125], is **GRANTED.** The class claims set forth in Plaintiffs' Second Amended Complaint are hereby dismissed **WITHOUT PREJUDICE.**

Dated:  January 7, 2011